J-S30043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL D. TWYMAN | : | |
| | : | |
| Appellant | : | No. 352 EDA 2023 |

Appeal from the Judgment of Sentence Entered December 16, 2022
In the Court of Common Pleas of Chester County
Criminal Division at No(s):  CP-15-CR-0000450-2022

BEFORE:  BENDER, P.J.E., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:               **FILED FEBRUARY 16, 2024**

Michael D. Twyman ("Twyman") appeals from the judgment of sentence imposed following his non-jury convictions for one count of driving under the influence, as well as related violations of the Motor Vehicle Code.[1]  After careful review, we affirm.

The trial court detailed the underlying facts:

Officer Jason Williams [("Officer Williams")] of the Parkesburg Police Department was on patrol and observed Appellant at 4:00 a.m. driving a severely damaged truck at a high rate of speed[.]

* * * *

[T]he vehicle driven by [Twyman] was damaged and being operated on the rim of the front passenger wheel.  Officer Williams conducted a traffic stop [coincidentally in front of Twyman's apartment building] of [Twyman's] vehicle[.]  He questioned [Twyman] and attempted to obtain his name, date of birth, and

---

[1] **See** 75 Pa.C.S.A. §§ 3802(a), 3714(a), 4107(b)(2), 1786(f), 1511(a).

the required documents for operating a motor vehicle in the Commonwealth. Officer Williams observed [] the vehicle had significant damage, including a broken driver's side mirror, no right tire and a broken brake line that was leaking brake fluid. He questioned [Twyman] about the condition of the car, including whether an accident or other harmful event had occurred. He inquired whether anyone had been injured. Officer Williams testified [at the hearing on Twyman's motion to suppress] that he was trying to find out what, if anything, had happened, why [Twyman] was driving the damaged vehicle, and whether there were any safety issues at the scene or in the surrounding area where [Twyman] had driven. During this questioning, [Twyman] was unable to provide any coherent answers to Officer Williams'[s] questions.

Officer Williams [] had [Twyman] view the damage to the vehicle from outside the car. As Officer Williams continued to ask [Twyman] about the circumstances surrounding the severely damaged vehicle, [Twyman] remained unable to answer his questions or explain how the vehicle had been damaged. [Twyman initially told Officer Williams he had been driving back from the Coatesville area, which was not true. Twyman later admitted he told Officer Williams this because his girlfriend was listening from the window of their apartment, and he did not want her to know he had been cheating on her. *See* N.T., 8/16/22, at 14.] Another officer during this time drove the nearby roads following the leaking brake fluid to determine if there was an unknown accident scene. Over time, Officer Williams observed [Twyman] to have an unsteady gait and to be swaying. Officer Williams [asked Twyman] if he had anything to drink. [Twyman] responded that he had beer. [Twyman] later refused field sobriety tests.

Trial Court Opinion, 3/23/23, at 2-3.

Twyman filed a pre-trial motion to suppress. Following a hearing, the trial court denied the motion. After a non-jury trial, the trial court convicted Twyman of the above-cited offenses. The trial court subsequently imposed a sentence of fifteen days to six months of incarceration. Twyman filed a post-

sentence motion, which the trial court denied.  The instant, timely appeal

followed.[2]

On appeal, Twyman raises a single issue:

Did the trial court err in denying [Twyman's] motion to suppress?

Twyman's Brief at 3.

Twyman challenges the denial of his motion to suppress.  **See** Twyman's

Brief at 11-18.  We begin by recognizing:

> Our standard of review . . . is limited to determining whether the findings of fact are supported by the record and whether the legal conclusions drawn from those facts are in error.  In making this determination, this [C]ourt may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for the defendant, as fairly read in the context of the record as a whole, which remains uncontradicted.  If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous.

**Commonwealth v. Gindraw**, 297 A.3d 848, 851 (Pa. Super. 2023) (citation

omitted).  Further, our review is limited to the suppression hearing record.  **In**

**re L.J.**, 79 A.3d 1073, 1085 (Pa. 2013).  "With respect to a suppression court's

factual findings, it is the sole province of the suppression court to weigh the

credibility of the witnesses.  Further, the suppression court judge is entitled

to believe all, part or none of the evidence presented."  **Commonwealth v.**

---

[2] Twyman and the trial court complied with Pa.R.A.P. 1925.

*Heidelberg*, 267 A.3d 492, 499 (Pa. Super. 2021) (citation and internal quotation marks omitted).

Twyman claims the trial court erred in denying his motion to suppress because the police violated his Fifth Amendment rights as delineated in *Miranda v. Arizona*, 384 U.S. 436 (1966). *See* Twyman's Brief at 11-18. Specifically, Twyman alleges, "the duration of [his] detention and the coerciveness of the questioning rendered [Twyman] 'in custody' entitling him to the full procedural safeguards as outlined in *Miranda*." *Id.* at 11.

We set forth the following legal principles. "[T]here are three levels of interaction between the police and citizens: (1) a mere encounter, (2) an investigative detention, and (3) a custodial detention." *Commonwealth v. Spence*, 290 A.3d 301, 314 (Pa. Super. 2023) (citation omitted).

> A mere encounter can be any formal or informal interaction between an officer and a citizen[] but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.
>
> In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.

*Id*. (citation omitted).

It is settled that **Miranda** warnings are only required for custodial detentions. **See id**. Motor vehicle stops are generally considered investigative detentions. **See id**. During traffic stops, "the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." **Id**. (citation omitted). Police officers may even go as far as handcuffing individuals during an investigative detention for safety reasons without automatically escalating that interaction into a custodial detention. **See id**.

An investigative detention rises to the level of a custodial detention when under the totality of the circumstances it "involves such coercive conditions as to constitute the functional equivalent of an arrest." **Id**. (citation omitted). "[P]olice need only give **Miranda** warnings while detaining a suspect by the side of a public highway when the suspect [has] actually [been] placed under arrest or when the questioning of the suspect is so prolonged or coercive as to approximate the atmosphere of a station house interrogation." **Commonwealth v. Toanone**, 553 A.2d 998, 1003 (Pa. Super. 1989) (citations and footnote omitted). Numerous factors are considered by the court to determine if an investigation is investigatory or custodial:

> the cause for the detention, the detention's length, the detention's location, whether the suspect was transported against his or her will, whether physical restraints were used, whether the police used or threatened force, and the character of the investigative methods used to confirm or dispel the suspicions of the police.

**Spence**, 290 A.3d at 314 (citation omitted).

- 5 -

Here, the trial court found the police stopped Twyman because of the undrivable condition of Twyman's vehicle, specifically that it "was being driven on the rim of the front passenger wheel." Trial Court Order, 8/18/22, at 2 n.1; **see also** Trial Court Opinion, 3/23/23, at 5. Thus, Officer Williams had reasonable suspicion to believe Twyman had violated a section of the Vehicle Code. **See** 75 Pa.C.S.A. § 4107(b)(2); **see also Commonwealth v. Williams**, 125 A.3d 425, 433 (Pa. Super. 2015) (affirming denial of suppression based upon police officer's reasonable suspicion of a violation of 75 Pa.C.S.A. § 4107(b)(2)).

The trial court further held the entire encounter was a single investigatory detention,

> reasonably directed toward the initial purpose of that stop — to address a heavily damaged car being driven on public roads. Officer Williams'[s] questioning was directed at determining whether [Twyman's] safety or the safety of others on the road that night was, or had been, at risk. . . . [O]fficer Williams' questions [were not] intended to ferret out unrelated criminal conduct.

Trial Court Opinion, 3/23/23, at 5. The court concluded Twyman was subject to an investigatory detention at the time Officer Williams questioned him. **See id**. at 5-6. The trial court explained:

> [a]s for [Twyman's] suggestion that [his] detention constituted the functional equivalent of an arrest[] the trial court disagrees. The . . . testimony of Officer Williams supported [the trial court's] findings that his interactions with [Twyman] were not focused on efforts to ask incriminating questions or secure incriminating answers. Officer Williams'[s] concern was the safety of [Twyman] and anyone else on the road that night that [Twyman] might have

- 6 -

already encountered or might encounter in the future. Officer Williams'[s] interaction did not follow a pre-determined decision to arrest Twyman, which would have required the protections prescribed by **Miranda**. **See** [] **Toanone**, 553 A.2d [at] 1003 [].

**Id**.

The record and relevant law support the trial court's ruling. There is no dispute as to the legality of the stop or the trial court's factual findings as to what happened thereafter. Rather, the dispute centers around the trial court's conclusion of law that the totality of the circumstances did not show Twyman was in custody at the time of Officer Williams's questioning requiring he give **Miranda** warnings. **See** Twyman's Brief at 11-18. Our *de novo* review of the claim, **see Commonwealth v. Young**, 287 A.3d 907, 915-16 (Pa. Super. 2022) (citation omitted), does not support the grant of relief.

Except for the length of detention, Twyman has not pointed to any specific factor which could have rendered the detention the functional equivalent of an arrest. **See** Twyman's Brief at 16-17. The record shows the police detained Twyman because they were attempting to ascertain the location of a suspected accident and whether there was any injury to persons, animals, or property.[3] **See** N.T., 8/16/22, at 11, 15. While the approximately thirty-four-minute detention may have been longer than a stop for a simple traffic violation, that length was attributable to Twyman's inability to answer

---

[3] A driver has a statutory duty to remain at the scene of an accident and provide police with information. **See** 75 Pa.C.S.A. §§ 3744, 3745.

basic questions and produce the required documents and then his lying to police about the location of the accident. *See id*. at 11-14. Further, the detention took place on a public road, and the police did not transport Twyman or place him in restraints. *See id*. at 7-16. Twyman does not allege the police ever used or threatened force, ever yelled at him, or cursed at him. *See id*. at 16-17. At most, Twyman has alleged that the second police officer on the scene used "language" which showed he did not believe Twyman's initial responses regarding the location of the accident and was "demanding the truth." *Id*. at 17. Although Twyman may not have felt free to leave, "custodial detention involves something more than mere exercise of control over the suspect's freedom of movement." *Spence*, 290 A.3d at 314 (citation omitted). Twyman has not shown that the investigative detention became a custodial detention such as to warrant *Miranda* warnings. *See id*. (rejecting an appellant's claim he was subject to a custodial detention, where the appellant was not restrained or placed in a patrol car, the police did not display any weapons, the stop occurred on a public roadway, and the police questioned the appellant and asked him to perform field sobriety tests); *see also Commonwealth v. Sloan*, 303 A.3d 155, 168 (Pa. Super. 2023) (same).

As the law and the record supports the trial court's denial of Twyman's motion to suppress, Twyman is not entitled to relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/16/2024